# Third District Court of Appeal

## State of Florida

Opinion filed February 2, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-180
Lower Tribunal No. 18-5221
_____

**Apollo Trust, et al.,**
Appellants,

vs.

**BNP Paribas Jersey Trust Corporation Limited,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

Gelber Schachter & Greenberg, P.A., and Daniel S. Gelber, Adam M. Schachter and Juan Carlos Zamora Jr., for appellants.

Marcus Neiman Rashbaum & Pineiro, LLP and Michael A. Pineiro; Kula & Associates, P.A., and Elliot B. Kula, W. Aaron Daniel and William D. Mueller, for appellee.

Before EMAS, GORDO and BOKOR, JJ.

BOKOR, J.

Apollo Trust appeals the trial court's denial of a motion to dismiss for lack of jurisdiction. We have jurisdiction.[1] The underlying litigation involves family disputes, trusts, art collections, allegations of hidden assets, and domestication of a judgment and freeze order from the Island of Jersey. *Ocean's Eleven* has nothing on the facts of this case. Stripping aside the family drama and globetrotting intrigue, we are left with a fact-intensive inquiry of minimum contacts under <u>Venetian Salami</u> and its progeny.[2] Against this backdrop, we conclude that the trial court admirably waded through the lengthy allegations but should have conducted a limited evidentiary hearing related to the ownership of artwork stored in Miami before finding jurisdiction.[3]

## BACKGROUND

In 1987, Edoarda Crociani, a wealthy matriarch from Monaco, established the Grand Trust for the benefit of her daughters, Cristiana and Camilla Crociani. The Grand Trust's assets included a company that held a collection of fine art, the Crociani Art Collection. In February 2010, Edoarda transferred the company to a new trust, the Fortunate Trust, for which she

---

[1] <u>See</u> Fla. R. App. P. 9.130(a)(3)(C).
[2] <u>Venetian Salami Co. v. Parthenais</u>, 554 So. 2d 499 (Fla. 1989).
[3] Additionally, Apollo seeks review of the trial court's handling of a motion to withdraw as counsel. We affirm on that issue without further comment.

was the grantor and sole beneficiary. The next year, Edoarda transferred the investment portfolio held by the Grand Trust into the Fortunate Trust. Due to a breakdown in her relationship with Cristiana, Edoarda revoked the Fortunate Trust, reverting the trust's assets to Edoarda. Edoarda then liquidated the investment portfolio and transferred the assets, including the Crociani Art Collection, outside of Jersey to herself and other various offshore entities that she controlled.

Edoarda and appellee, BNP Paribas Jersey Trust Corporation Ltd., served as co-trustees of the Grand Trust from October 2007 through February 2012. In connection with Edoarda's formation and revocation of the Fortunate Trust, in 2010 and 2011, Edoarda provided BNP with two indemnities obligating her to indemnify BNP against any liability or loss arising from the management or administration of the Grand Trust.

In 2013, Cristiana Crociani sued Edoarda and BNP in the Royal Court of Jersey for breach of trust. BNP, in turn, filed a cross claim (referred to in the Jersey proceedings as a third-party claim) against Edoarda pursuant to the 2010 and 2011 indemnities. In connection with its cross claim, BNP applied to the Jersey court for a pre-judgment worldwide asset freeze and disclosure order against Edoarda, citing her history of non-compliance with court orders. On August 4, 2016, the Jersey court entered a pre-judgment

3

freezing order, which restrained Edoarda from: (1) removing assets from the Island of Jersey held by her or over which she has direct or indirect control; and (2) disposing of or diminishing the value of any assets held by her or over which she has direct or indirect control, whether solely or jointly owned, up to the value of $194 million.

After years of litigation, on September 11, 2017, the Jersey court entered judgment in favor of Cristiana on her breach of trust claims against Edoarda and BNP. Edoarda and BNP were found jointly and severally liable to Cristiana and ordered to reconstitute the trust or provide her with equitable compensation for the current value of the trust assets. Edoarda and BNP were ordered to make an initial payment of $100,347,046.00 to the new trustee of the Grand Trust, $52 million of which BNP has already paid. On BNP's cross claim against Edoarda, the Jersey court held Edoarda was obligated to indemnify BNP for the full amount of its liability to Cristiana as well as for any other losses sustained by BNP. The Jersey court also entered a post-judgment freezing order, making permanent the terms of the pre-judgment freezing order.

Edoarda has not satisfied any portion of the judgment and has continued to violate the freezing order by hiding and transferring assets to avoid enforcement of the judgment. BNP engaged in extensive discovery to

4

locate Edoarda's assets throughout the world, including in the United States. Through discovery, BNP learned that, in December 2016, Edoarda transferred the Crociani Art Collection to different parts of the world. Seven of those paintings have been located at the Museo Vault, an art storage facility located in Miami-Dade County, Florida.

On February 23, 2018, BNP instituted an action in the circuit court in Miami-Dade County to obtain the paintings located in Miami-Dade County in partial satisfaction of the judgment. First, BNP filed a petition in the lower court seeking recognition and enforcement of the Jersey judgment and post-judgment freezing order. Next, on February 26, 2018, BNP filed an *ex parte* emergency motion seeking recognition of the freezing order and a temporary injunction that would enforce and recognize the freezing order. That same day, the trial court granted BNP's *ex parte* emergency motion, recognizing the freezing order and enjoining Edoarda, as well as anyone else served with or in receipt of a copy of the order, from "disposing of, dealing with, or diminishing the value of any of" the paintings located in Miami-Dade County.

On April 2, 2018, Apollo Trust specially appeared to file its motion to dissolve the *ex parte* temporary injunction. Who is Apollo? In its motion, Apollo averred: (1) Apollo (not Edoarda) owned several pieces of art subject to the temporary injunction; (2) Apollo was not a party to the Jersey

5

judgment; (3) Apollo was not a named party in the Miami-Dade circuit court proceedings; and (4) the circuit court had no basis for exercising personal jurisdiction over Apollo. On April 6, 2018, the trial court denied Apollo's motion to dissolve the injunction.[4]

Later, on October 30, 2018, BNP filed a motion for proceedings supplementary and to implead the United Trust entities, as trustees of Apollo, as defendants, which the trial court granted on November 13, 2018, issuing notices to appear in compliance with section 56.29(2), Florida Statutes. Apollo and United Trust filed a limited response contesting personal jurisdiction and moved to dismiss for lack of personal jurisdiction. After a hearing, the trial court denied the motion to dismiss for lack of personal jurisdiction. The trial court subsequently denied a motion for reconsideration. This appeal followed.

**ANALYSIS**

We review a trial court's denial of a motion to dismiss for lack of personal jurisdiction *de novo*. See Bohlander v. Robert Dean & Assocs. Yacht Brokerage, Inc., 920 So. 2d 1226, 1228 (Fla. 3d DCA 2006) (citing

---

[4] On appeal, this court per curiam affirmed the trial court's denial of Apollo's motion to dissolve the injunction. Apollo Tr. v. BNP Paribas Jersey Tr. Corp. Ltd., 256 So. 3d 191 (Fla. 3d DCA 2018).

<u>Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., Ltd.</u>, 752 So. 2d 582 (Fla. 2000)).

This matter involves the interplay between proceedings supplementary and the exercise of specific jurisdiction over non-resident defendants in possession, custody, or control over certain assets—the Miami artwork—located in Florida and subject to execution.  Here, Apollo challenges the trial court's exercise of personal jurisdiction.  As we agree that no general jurisdiction exists over Apollo and its trustees, we examine whether BNP states a claim subjecting Apollo and its trustees to specific jurisdiction.

We first examine whether the trial court properly exercised personal jurisdiction over Apollo and its trustees.  The issue here, stripped down of the international intrigue, becomes a standard <u>Venetian Salami</u> analysis: does "the complaint allege[] sufficient jurisdictional facts to bring the action within the ambit of the statute;" and if it does, does the record reveal "sufficient 'minimum contacts' . . . to satisfy due process requirements?"  <u>Venetian Salami Co. v. Parthenais</u>, 554 So. 2d at 502 (citations omitted).  As to the first inquiry, a careful review of the record reveals that BNP's motion

for proceedings supplementary alleged sufficient jurisdictional facts within the ambit of the long-arm statute.[5]

The determinative question revolves around the second prong of the Venetian Salami analysis: whether sufficient minimum contacts exist to subject Apollo to the jurisdiction of a Florida court.[6]  Based on the facts of this case, the minimum contacts analysis hinges on the long-arm statute's connexity requirement.  Connexity requires that a defendant's conduct occur in Florida and that a plaintiff's cause of action arise from such Florida activity. Banco de los Trabajadores v. Cortez Moreno, 237 So. 3d 1127, 1135 (Fla. 3d DCA 2018).  Here, the underlying proceeding supplementary seeks to

_____

[5] BNP alleged that: (1) in October 2017, Apollo Trust began coordinating the transfer of the artwork at issue to Museo Vault in Miami; (2) in November 2017, Apollo shipped the artwork from Luxembourg to Museo Vault in Miami, and entered into a storage agreement with Museo Vault for storage of the paintings; (3) when it transferred the artwork, Apollo obtained insurance for the artwork through NSI Insurance, a south Florida insurance company; (4) Apollo engaged an art appraisal company to examine the paintings in Florida; and (5) it retained Florida counsel to assist it with storing and insuring the paintings.  These allegations support a *prima facie* case for specific jurisdiction pursuant to sections 48.193(1)(a)(1), 48.193(1)(a)(2), 48.193(1)(a)(4), and 48.193(1)(a)(9), Florida Statutes.

[6] The test to determine whether the due process requirement is satisfied asks "whether the defendant's conduct in connection with the forum state is 'such that he should reasonably anticipate being haled into court there.'" Venetian Salami, 554 So. 2d at 500 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

attach artwork located in Miami-Dade County, which may be applied toward the satisfaction of the Jersey judgment. § 56.29(2), Fla. Stat.

Apollo offers a novel read on the connexity requirement. Apollo argues: "First, and most fundamentally, BNP has not asserted any cause of action against Impleaded Defendants pursuant to which specific jurisdiction could exist." This argument misses the mark. In this case, it's about the asset, and who owns it. Apollo's argument would create a rigid "talismanic jurisdictional formula[]," ignoring that "the facts of each case must [always] be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice." Venetian Salami, 554 So. 2d at 501 (citations and quotations omitted). Indeed, following Apollo's argument to its logical conclusion would create a legal catch-22 that would allow a judgment debtor to hide assets in another jurisdiction in which the debtor has no other contacts.

Rather, this court recognized that "[t]he minimum contacts requirement of the due process clause does not prevent Florida from enforcing another state's valid judgment against a judgment-debtor's property located there, regardless of the lack of other minimum contacts by the judgment-debtor." Tabet v. Tabet, 644 So. 2d 557, 559 (Fla. 3d DCA 1994) (citing Shaffer v. Heitner, 433 U.S. 186, 210 n.36 (1977)). However, our inquiry doesn't end

9

here. We also disagree with BNP's overbroad understanding of *quasi in rem* jurisdiction which would, taken to its logical extreme, allow impleading of any defendant at any time based on the location of an asset in Florida, without regard to ownership. Instead, as in <u>Tabet</u>, the linchpin of jurisdiction, regardless of talismanic language and labels, rises and falls on whether Edoarda owns, or maintains an executable interest, in the Miami artwork.

So, who owns the artwork? Apollo filed an affidavit claiming Apollo's— not Edoarda's—ownership of the Miami artwork. If the artwork isn't Edoarda's, Apollo argues, then BNP can't satisfy the connexity requirement or demonstrate minimum contacts. BNP seeks to execute against *Edoarda's assets,* and such execution doesn't arise out of *Apollo's* storage of artwork Apollo claims to own, in Florida. In other words, according to Apollo, what connection could Apollo, a foreign entity doing no business in Florida, have to an action seeking to execute on Edoarda's assets, when the assets sought are owned not by Edoarda, but by Apollo?

The facts and legal analysis in <u>Tabet</u> prove instructive here. In <u>Tabet</u>, the wife sued the husband for divorce in California state court. <u>Id.</u> at 558. The California court entered a money judgment in favor of the husband. <u>Id.</u> To enforce the judgment, the husband sought to execute on three properties located in Miami-Dade County, titled in the name of a German entity. <u>Id.</u>

10

The husband then domesticated the California judgment in Florida and obtained an *ex parte* temporary injunction to prevent the wife from transferring her interest in the properties. Id. The Miami-Dade court issued a writ of execution against the wife, and the husband filed proceedings supplementary to determine the value of the wife's interest in the Miami-Dade property. Id.

The wife moved to dismiss the proceedings supplementary for lack of personal jurisdiction, arguing that she had no minimum contacts with Florida. Id. at 558–59. This court rejected the wife's argument, holding, "[a]s to the jurisdiction question, any executable property interest which Wife has in the Dade County properties is a sufficient minimum contact to confer personal jurisdiction over her for the purpose of satisfying the domesticated judgment." Tabet, 644 So. 2d at 559. This court remanded the cause back to the trial court for a limited evidentiary hearing to determine the true owner of the real property. Id.

While at first glance, the multiple transfers, disputed ownership, and use of trusts present a wrinkle to the exercise of personal jurisdiction over Apollo, the Tabet analysis provides the piece to solve the puzzle. Like in Tabet, this matter should be remanded for a limited evidentiary hearing to

11

determine Edoarda's "executable property interest" in the artwork in Miami-Dade County.  Id.

In the action on appeal, BNP alleged that the Miami artwork can be traced directly to the judgment-debtor, Edoarda.[7]  Apollo filed an affidavit claiming ownership of the Miami artwork.  BNP filed a counter-affidavit.  This becomes a factual dispute over ownership that must be resolved by the trial court.  The resolution of this inquiry determines the ultimate question before us: whether the defendant should reasonably anticipate being haled into court in Florida.

**CONCLUSION**

This question must be resolved in a limited evidentiary hearing aimed at determining Edoarda's executable interest in the Miami artwork, if any.[8] Id.; see also Mejia v. Ruiz, 985 So. 2d 1109, 1112–14 (Fla. 3d DCA 2008) (explaining method of determining whether a conveyance of personal property is void); WH Smith, PLC v Benages & Assocs., 51 So. 3d 577, 581 (Fla. 3d DCA 2010) ("[T]he procedure for determining long-arm jurisdiction

---

[7] In its response in opposition to Apollo Trust's motion to dissolve temporary injunction, BNP describes, in detail, the actions of the judgment-debtor's ownership of the Crociani Collection which includes the Miami artwork and the subsequent transfer of the artwork to Apollo.

[8] In determining Edoarda's executable interest, the trial court should consider, to the extent necessary, ownership, fraudulent transfer, and alter ego jurisdiction.

set forth in <u>Venetian Salami</u> . . . is universal and therefore applicable to the alter ego theory." (citations omitted)).  If Edoarda possesses such an interest in the Miami artwork, then Apollo and its trustees, who undisputedly store, maintain, and insure the artwork in Miami, could reasonably anticipate being haled into a Florida court where the assets are located.[9]  <u>See</u> <u>Tabet</u>, 644 So. 2d at 559; <u>see also</u> <u>Venetian Salami</u>, 554 So. 2d at 502.

Accordingly, we affirm the order of the trial court in part but reverse and remand for a limited evidentiary hearing consistent with this opinion.

---

[9] A judgment debtor's alleged attempt to shield assets from attachment by fraudulent transfer is not a matter of first impression.  In <u>Mejia</u>, the plaintiff/appellant Australia Mejia instituted proceedings supplementary against impleaded parties to attach the proceeds of an alleged fraudulent sale of an apartment complex by the judgment debtor.  <u>Mejia</u>, 985 So. 2d at 1111.  In that case, this court considered whether the transfer was void pursuant to section 56.29(6)(b), Florida Statutes.  Section 56.29(6)(b), Florida Statutes, renders void any transfer, assignment, or other conveyance of personal property made or contrived by defendant to delay, hinder or defraud creditors.  §56.29(6)(b), Fla. Stat.  Such alleged fraudulent transfers are to be determined in accordance with sections 726.105(1) and (2), Florida Statutes.  §§726.105(1)-(2), Fla. Stat.  If the transfer is void, notwithstanding Apollo's claims, Edoarda is the true owner of the Miami artwork.